IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> SALVATORE J. LEONE, ) <br> ) <br> Defendant. ) | Criminal Action No. 13-95-UNA |

FELONY INFORMATION

The United States Attorney for the District of Delaware charges that:

INTRODUCTION

*Information Relevant to All Counts*

FILED

SEP - 9 2013

U.S. DISTRICT COURT DISTRICT OF DELAWARE

At all times material to this Information:

1. Defendant Salvatore J. Leone ("Leone" or "defendant") was a project manager and partner in several limited liability companies formed for the purpose of developing real estate in and around the area of Dover, Delaware, including but not limited to TBC Enterprises, LLC; North Dover Holdings, LLC; and Shoppes at Fieldstone Village, LLC.

2. Michael A. Zimmerman ("Zimmerman"), a separately charged co-conspirator, was the owner and President of BBC Properties, Inc. ("BBC"), a real estate development company located in Dover, Delaware.

3. Through BBC, Zimmerman undertook numerous business ventures and real estate development projects, consisting of commercial and residential development, commercial and residential leasing, and marina development and operations in Delaware, Maryland, Florida, and the Bahamas.

1

4. Zimmerman established separate limited liability corporations ("LLCs") and partnerships for each of his real estate development projects. In some instances, Zimmerman was 100% owner of a particular LLC, while in others he took on additional partner(s).

5. As set forth below in Paragraphs 10-13, Leone acted as a project manager on several real estate projects with Zimmerman, including Salt Pond Plaza, LLC ("Salt Pond"), Compass Pointe, LLC ("Compass Pointe"), and Shoppes at Fieldstone Village, LLC ("Shoppes at Fieldstone"). Leone also was Zimmerman's partner on the Shoppes at Fieldstone project.

6. Partner A was a realtor and partner in several projects with Zimmerman, including but not limited to Salt Pond.

7. BBC Employee A was an employee and bookkeeper for BBC and Zimmerman's various related entities who also managed Zimmerman's personal bank accounts.

8. Wilmington Trust Co. (also referred to as "WTC" or the "Bank"), headquartered in Wilmington, Delaware, was a financial institution, as defined by Title 18, United States Code, Section 20, with deposits insured by the Federal Deposit Insurance Corporation.[1] WTC provided financing to each of the Zimmerman-related projects, as set forth more fully below.

9. WTC Employee A was a Relationship Manager at WTC who was responsible for initiating and managing the Bank's relationship with the Zimmerman-related projects, including Salt Pond, Compass Pointe, and Shoppes at Fieldstone.

10. Salt Pond was a limited liability corporation established for the purpose of developing a commercial center adjacent to the Salt Pond Community and Golf Course in Ocean View, Delaware (the "Salt Pond project"). Zimmerman owned an 89% interest in Salt Pond, while Partner A owned an 11% interest. Between January 10, 2007, and December 10, 2009, Zimmerman and Partner A obtained three loans from WTC totaling approximately

---

[1] Beginning in or around December 2008, WTC also participated in the Department of the Treasury's Troubled Asset Relief Program.

$12,231,123.00 to develop the Salt Pond project. Leone served as the project manager on the Salt Pond project.

11. Compass Pointe was a limited liability corporation established for the purpose of developing a commercial project on North State Street in Dover, Delaware (the "Compass Pointe project"). Zimmerman owned a 50% interest in Compass Pointe, while the remaining 50% interest was owned by RTZ Associates, LLC ("RTZ"). RTZ, in turn, was owned by the RJZ Investment Trust (49.5% interest), the TJZ Investment Trust (49.5% interest), and Zimmerman (1%). The RJZ Investment Trust and the TJZ Investment Trust are trusts that were established for the benefit of Zimmerman's family members. Between July 25, 2007, and June 16, 2009, Zimmerman obtained four loans from WTC totaling approximately $7,702,017.00 to develop the Compass Pointe project. Leone served as the project manager on the Compass Pointe project.

12. Shoppes at Fieldstone was a limited liability corporation established for the purpose of building a shopping center at the intersection of Route 13 and Fork Branch Road in Dover, Delaware (the "Shoppes at Fieldstone project"). The entity North Dover Holdings, LLC owned a 100% interest in Shoppes at Fieldstone. North Dover Holdings, LLC was wholly owned by TBC Enterprises, Inc. ("TBC"). Leone and Zimmerman, in turn, each owned a 50% interest in TBC. Thus, Leone and Zimmerman each owned a 50% interest in the Shoppes at Fieldstone. Between January 17, 2008, and December 9, 2009, Leone and Zimmerman obtained three loans from WTC totaling approximately $17,323,549.34 to develop the Shoppes at Fieldstone project. Leone also served as the project manager on the Shoppes at Fieldstone project.

13. The Salt Pond, Compass Pointe, and Shoppes at Fieldstone projects shall hereinafter collectively be referred to as the "WTC-related projects."

## COUNT 1

(Conspiracy to Commit Bank Fraud)

### *The Conspiracy*

14. From on or about September 24, 2007, through on or about February 27, 2009, in the District of Delaware, defendant Salvatore J. Leone knowingly and intentionally combined, conspired, confederated and agreed with others known and unknown to the United States Attorney to commit an offense against the United States, to wit: bank fraud, that is, to knowingly execute a scheme and artifice to defraud a financial institution, to wit, WTC, and to obtain any of the moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, a financial institution, to wit, WTC, by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1349.

### *The Purposes of the Conspiracy*

15. The purposes of the conspiracy included, but were not limited to, the following: (1) defendant and his co-conspirators submitted fraudulent construction draw requests to WTC in connection with the WTC-related projects, and thereby obtained loan proceeds to use for purposes other than those set forth in the draw requests; (2) defendant and his co-conspirators retained project funds from a lease payment for their own personal use in contravention of the terms of the Shoppes at Fieldstone project loan agreement; and (3) defendant and his co-conspirators retained funds for their own personal use that were designated as project equity and to pay project expenses under the terms of the Shoppes at Fieldstone project loan agreement.

### *The Ways, Manner, and Means of the Conspiracy*

16. The ways, manner and means by which defendant and his co-conspirators sought to accomplish the conspiracy included, but were not limited to, the following:

17. From on or about September 24, 2007, through on or about February 27, 2009, defendant and others, including but not limited to Zimmerman and BBC Employee A, submitted or caused to be submitted, at least three fraudulent construction draws to WTC. At a minimum, defendant and Zimmerman and others known and unknown to the United States Attorney caused one fraudulent draw to be submitted to WTC on the Salt Pond project; one fraudulent draw to be submitted to WTC on the Compass Pointe project; and one fraudulent draw to be submitted to WTC on the Shoppes at Fieldstone project.

18. The fraudulent construction draws included: (A) requests to pay particular "soft costs" – i.e., costs associated with professional services, such as architectural, engineering, real estate, and legal work for work that was not actually performed; (B) the submission of duplicate invoices for construction draws on multiple occasions; and (C) requests for the payment of costs ostensibly incurred on the WTC-related projects by submitting invoices associated with costs for unrelated projects.

19. At a minimum, the fraudulent draw requests for the three WTC-related projects totaled approximately $483,568.00.

20. WTC Employee A caused WTC to fund the construction draws for the WTC-related projects.

21. Defendant and Zimmerman used the WTC loan proceeds for purposes unrelated to those set forth in the construction draw requests.

22. In addition to the fraudulent construction draw requests to WTC, defendant misappropriated WTC funds on one occasion in contravention of the loan agreements for the Shoppes at Fieldstone project.

## *Conduct in Furtherance of the Conspiracy*

In furtherance of the conspiracy and to effectuate the purposes thereof, the following acts, among others, were committed in the District of Delaware:

23. On or about September 24, 2007, Leone agreed to create a bill for Zimmerman for $231,000 purportedly for work performed on the Compass Pointe project, with intent to submit the bill to WTC for payment. However, as defendant and Zimmerman knew, the payment was not for work actually performed on Compass Pointe, but instead was to be used by Leone to fund a capital call on at least one unrelated real estate project.

24. On or about October 28, 2008, Leone and Zimmerman submitted to WTC a fraudulent construction draw request for $8,568.00. The conspirators represented that these loan proceeds would be used to fund a change order associated with the Salt Pond project. Instead, Leone and Zimmerman used the loan proceeds for another purpose, namely for construction costs associated with an unrelated project.

25. On or about January 3, 2008, Leone and Zimmerman submitted to WTC a fraudulent construction draw request for approximately $170,000.00. The conspirators represented that these loan proceeds would be used to fund construction costs associated with the Compass Pointe project. Instead, Leone and Zimmerman used at least some of the loan proceeds for another purpose, namely the payment of a check to Zimmerman in the amount of $100,000.00.

26. On or about January 15, 2008, Leone and Zimmerman submitted to WTC a fraudulent construction draw request for $375,000.00. The conspirators represented that these loan proceeds would be used to fund architectural and engineering costs associated with the Shoppes at Fieldstone project. Instead, Leone and Zimmerman used the loan proceeds for another purpose, namely the payment of a check to Leone in the amount of $120,000.00, a check

to Zimmerman in the amount of $120,000.00, and a check to Shoppes at Fieldstone in the amount of $135,000.00.

27. On or about February 27, 2009, Leone and Zimmerman misappropriated approximately $260,000.00 in escalated lease payments received from a lessee for the Shoppes at Fieldstone project. In the loan agreement for the Shoppes at Fieldstone project, it had been represented that the escalated lease payments would be reinvested back into that project. Rather than comply with the terms of the loan agreement, Leone and Zimmerman used the loan proceeds for another purpose, namely the payment of a check to Leone in the amount of $130,000.00 and the payment of a check to Zimmerman in the amount of $130,000.00.

All in violation of Title 18, United States Code, Section 1349.

## NOTICE OF FORFEITURE

Upon conviction of the offenses in violation of Title 18, United States Code, Section 1349 alleged in Count 1 of this Information, defendant Salvatore J. Leone shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violations.

If any of the forfeitable property, as a result of any act or omission of the defendant:

(a)   cannot be located upon the exercise of due diligence;

(b)   has been transferred or sold to, or deposited with, a third party;

(c)   has been placed beyond the jurisdiction of the court;

(d)   has been substantially diminished in value; or

(e)   has been commingled with other property which cannot be divided with difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 982(a)(2)(A) and Title 28, United States Code, Section 2461(c).

CHARLES M. OBERLY, III
United States Attorney

By: _____
Robert F. Kravetz
Assistant U.S. Attorney

By: _____
Lesley F. Wolf
Assistant U.S. Attorney

Dated: September 9, 2013